Coriell v. Snyder Good morning, Mr. Jones. How are you today? We're doing pretty well. I'm here with some consternation at having a panel with so many Alabama fans, but I actually feel good about that. Actually, you only really get one out of three because he's an Auburn fan. Same difference. Georgia fans, same difference. Let's jump into Bradley, because I know that's where you were headed anyway. So in Bradley, we addressed the use of a taser from basically knocking someone off an eight-foot wall, and we said, look, the same way pushing someone down is not necessarily deadly force, it's not deadly force. Pushing someone off a building would be deadly force, and so tasing someone under sort of normal circumstances is not deadly force, but tasing someone when they're at the top of a wall or when they're in a swimming pool or when they're in something like that, it would be deadly force. This seems to be the situation where you were just tased under sort of normal circumstances. How is the use of the taser here the equivalent to deadly force? Well, it's not necessarily deadly. It has the potential to be deadly, but as you stated in Bradley, that the suspect in that case, Mr. Robinson, I believe coincidentally, was in a precarious position when tased. And so the material fact here is whether the uncontrolled fall, which all tasers, if the taser works, there's always an uncontrolled fall. There's always five seconds of the mobilization where they're not able to break the fall. I'm not asking you to say that you can't tase somebody that's going to have an uncontrolled fall because that would abolish tasers completely. But what I can say is that if it's likely, if someone is in a position where it's likely to cause serious injury or death, then you can only use the taser if the circumstances warrant the use of the taser. And would those circumstances be anytime someone's on pavement or asphalt? That would be a circumstance. There's actually two different rules that you can discern from the case law. One is that you don't tase somebody who's merely fleeing. If they're not combative, then don't pose a violent threat. And if you do that, if you follow that rule, then that moots the second rule. The second rule would be you don't tase someone in situ or circumstances where it's likely to cause serious injury or death unless that person poses a violent threat. And then we'll be justified in using that. Let's go back to the football analogy. Let's say this officer had been a linebacker at the University of Georgia, which has pretty good defense, and he had chased the fleeing suspect who had pushed him out of the way and denied him truthful information, was running toward a shopping center, and he just leveled him. Just leveled him there in the parking lot. He can use force to arrest the suspect, right? The force has to be proportionate to the... Yeah, he brings him down. He tackles him. He's a big guy, you know. Is that any different from a single tase? I think it is, and I'll tell you why in a second. But first of all, I don't think that would ever happen with an Alabama running back. I don't think they would be able to take it down. This was a Georgia linebacker. That's what I said. The officer is a Georgia linebacker. I didn't even go to Georgia. I went to an Ivy League school where the sports were terrible, but my wife went to Georgia, so that makes me a bulldog. Okay. Let's take my point. Yes. All right? The officer could tackle him, right? Yes. And we're talking about the same kind of risk of entry. Not necessarily. Here's the thing about tasers that makes it different from other use of force applications is that the rules are uniform. The training is uniform. In order to use a taser, you have to be certified that you're in law enforcement, and all law enforcement officers in America receive the same training. And just as the guidelines of the U.S. Marshals Service were relevant in showing that the law is clearly established in the Wilson v. Lane case, which was cited by the Supreme Court in our Hovey-Pelzer case, and also in Hovey-Pelzer, the Administrative Regulation Department, I think it was AR-429 when you were Attorney General, they held that that policy, the limitations on the use of force and restraints in that policy, was evidence that the law was clearly established. So even though these training guidelines and so forth can't establish the law, if they are consistent with the law and if the standard, at least for qualified immunity, is whether a reasonable officer would believe that he or she was allowed to do something, then it's relevant to look at what all reasonable officers are trained to do. And some of the taser guidelines in this case, which are referenced by my expert, state things like the loss of control resulting from a C.E.W. that's conducted electronic weapon exposure may result in injuries due to a foul or other uncontrolled movement. When possible, avoid using C.E.W. But all right, so the training so says police officers should use tasers only against subjects who are aggressive, actively resisting arrest, in a way likely to cause injury. This is someone who has already pushed the officer out of the way, is fleeing towards a busy shopping center. Why isn't that enough? Because under the part of the facts, he didn't push the officer out of the way. The only thing that everyone can say is that there was incidental contact as he ran past the officer. And in any event, the guy's merely fleeing. He's not suspected of a crime. There's no probable cause to arrest him for anything at that point. There is certainly a reasonable article of suspicion that he may be up to something because he's a passenger in a vehicle that's been stopped for a tag violation that's already been cleared. And he wore this I.V., which he doesn't have to do, but then he gives a fake name, which he's not allowed to do, and he runs. But at that point, this is a day laborer who had been standing in front of a Home Depot to cut somebody's grass who, gee, not unforeseeably, was behind in paying his probation fees and unwisely chose to run. But this is what the policies say. They say you shouldn't tase somebody on an elevated or unstable surface. You shouldn't tase them if they could fall and suffer serious injury to the head or other area. That would include somebody approaching payment. But Bradley's talking about someone who's on top of a wall, right? I'm reading the guidelines.  I thought you said Bradley. I apologize. No, I'm sorry. I read that as Bradley said, but also it says I guess here's the thing about if they're running at a momentum, then the momentum's going to carry them into the wall. So it says that. It says that you shouldn't tase someone while they're running? No. Oh, I'm sorry. I'm sorry. I got to cut you off there. What does it say in the guidelines? It says someone who is, well, it says a lot of things. But it says that someone who's running or moving under momentum wherever the fall could, you know, could cause injury. Right. Unless the circumstances justify the risk of using, you know, Yeah. the standing measures. I guess that's the question I have, which I just kind of circled back to this, is what about the use of the taser here makes it the kind of force that an officer would reasonably believe would lead to serious bodily injury or death? Right? The fact that if in 2015 it's foreseeable that somebody could fall off a wall and break their neck. Well, that specifically says that. I mean that. In 2019, that somebody could fall on pavement, fracture the skull, and have a brain injury, which is what we've got here. Well, I guess that's what, I guess, I mean, you're just sort of answering it by giving the facts of the case. I guess my question is, what is it, I mean, are you just, if you use a taser over pavement, is that what you're saying is that's deadly force? Unless the defenders of conduct would justify. Well, yeah, I'm just saying, is it deadly force? I mean, so. Well, is it? I mean, because it either is or isn't, right? I mean, the definition of deadly force is the kind of force that an officer would reasonably believe would likely lead to serious bodily injury or death. And I'm having a hard time seeing how, and I mean, maybe I'm just wrong, but I'm just having a hard time seeing how using a taser over concrete would meet that. Now, you're right, there could be a freak accident, right, where someone falls down. I mean, you can always have freak accidents. But how would that be, how does it meet the definition of use of force that would likely lead to serious bodily injury or death? Well, one is that it did. And secondly, the fact that they're trained to recognize that as a possibility. I think what we're confusing here is the difference between the rule, which is clearly established, and the application of the facts to that rule. I would submit to you that this factual determination is something that needs to be made by a jury and not by this Court in deciding what the rule is. I think the rule is clear. The question is, does it, you know, under the view of facts most favorable to the plaintiff, does the conduct of the officer in this case violate that rule? Right, but you're making an argument that anytime a taser is used when a person is on a hard surface, that is deadly force, or can be deadly force, right? Yes, and that means you better have justification for doing it in case there is an injury. And if you look at, there's a half a dozen people walking around this building that have had this training. The Department of Justice guidelines say the same thing. Georgia Association of Chiefs of Police say the same thing. Georgia Department of Public Safety says the same thing, and that is fleeing should not be the sole justification for using the taser on a subject. And I think that the facts of this case would allow the jury to judge that this guy was merely flitting, certainly merely flitting at the point that he was tased as he was approaching this pain. And I think the rule is that if the use of the taser is such that it could cause a serious injury, you can't use the taser unless you're justified in causing serious injury. And without even getting to that point, this is what my expert focus was on, was on the first rule, if somebody's merely fleeing, you don't tase them at all. They're coming at you, fine, tase them. If they're running away, you can't shoot them, can't tase them, unless they pose an active threat. And in this case, you've got the backup officers serving them who would have caught them anyway. Okay, Mr. Jones, you've saved a few minutes. Mr. Gray? Thank you. Harvey Gray on behalf of the appellees. Frankly, as we often say, I could be wrong, but it seems to me this is an easy case. We have an ongoing, it was not concluded, suspicion of a stolen car. No tag, no explanation, no purchase and sale, conflicting testimony. Mr. Jones says you can't get a passenger to provide ID. Well, he's wrong. Johnson v. NACA, which I think in 2024, said the law is not clearly established today that you cannot ask for an ID or make an arrest for obstruction if they refuse to provide it. But nonetheless, these crimes don't seem very severe to me, and there's no evidence that Mr. Coryell posed any threat to anyone, that he had a weapon, for example. So what about your opponent's argument? He's on a hard surface and all he's doing is fleeing with no threat of harm to anybody. Why is that reasonable to tase him? I don't believe that's the proper analysis here. We don't know what he had in mind. We don't know if he had a gun because he ran before he could be patted down for weapons. We know that he lied to an officer three times, said he didn't have an ID when he did, said that gave a false name, gave a false date of birth. When confronted with it, he did it again. When he's asked to exit the car, which the officer's fully entitled to do, he flees. It seems incongruous to me if we take Benton, which was, of course, decided after this case. Judge Brasher, I think you authored that decision. It says a reasonable jury could find that Officer Benton applied deadly force, that is, force that an officer knows to create a substantial risk of causing death or serious bodily harm. And that is not the situation we have here. It's heavily disputed whether he was on a hard surface. The officer says he was not. The video does not reflect that he was. Coriel himself gave very conflicting testimony about whether he said, majority of the time I was running on the grass. Well, let's just set that aside. Let's say it was undisputed that he was on asphalt when the officer fired the taser. The officer has to know that. The officer has to understand that. Well, let's suppose that, in my hypothetical, the officer does know that. You have someone who's fleeing who has lied to the police officer, has refused to give identification, and that's it, right? So why is it reasonable to use the taser in those circumstances? Well, two answers to that. It is reasonable, and there's plenty of case law in the 11th Circuit, all cited by Judge Cohen in his decision. One was a fleeing suspect who was, a taser was fired, fell to the ground on a hard surface and was injured. Of course, nevertheless said that it is objectively reasonable. If we move to clearly established law. Well, tell me this. If we look at the body cam video, which is in the record, and we don't think there's any real dispute of fact, genuine dispute of fact that the body cam video shows that the suspect pushed the officer, does that figure in the analysis? It would, and let me add one other thing briefly. Mr. Jones disagrees with this vehemently, but he was actually charged in the arrest warrant with subsection B, obstruction, which is doing violence, and he entered a plea agreement represented by a lawyer in which he pled guilty to a violation of 161024B, which is offering to do violence. So, both of those issues are in play here. He did push the officer aside. The judge, in writing the decision, said, I'll view that in favor of the plaintiff as the non-moving party. They definitely had hands. They definitely had some contact, and he did flee. The four cases that are cited in Judge Cumlin's brief all authorized a taser use. Taser is a non-deadly, non-lethal device. He didn't shoot him with a gun. That would be a different case. But the guy is unknown what he's got on his person. As it turns out, he had drugs on his person. He didn't have a gun, as far as we know. He knew nothing about him except that he'd lied to him three times, and when he's asked to exit the car, he first refuses, and then he bolts, and he's running towards a busy shopping center. He might have a gun because he was never patted down by weapons. How is it not objectively reasonable? The only option he has is to let him run in there and see what happens. Suppose he's got a gun, and he shoots somebody or takes a hostage. This is a reasonable officer on the scene. It's not the only option. He could run after him and tackle him and bring him down. Well, if he was a Georgia linebacker, he probably could have caught up. No, but, I mean, an officer could do that, right? Well, he could try. But how far away is he? I just don't see any case. Well, I guess I think to go to Chief Judge Pryor's question, I mean, is there a distinction as far as the use of force goes between tasing someone down on a parking lot versus tackling them down on a parking lot? You know, as far as is there some distinction from likelihood of serious injury or likelihood of death from those two things? So if he tackles him in the parking lot and he suffers the same injury, is that a violation of his rights? I mean, to me, that's kind of a distinction without a difference. I think the nonlethal use of force in this situation, and, again, the standard for qualified immunity would be every reasonable officer, that's the Iqbal case, would every reasonable officer know that what he was doing violated the law. And there's no case law like that. And the only cases that plaintiff has cited were all post this decision. And I just don't see how, number one, it's not objectively reasonable based on the case law. And, number two, qualified immunity in this case is absolutely warranted. It's not mandated. Thank you. Mr. McCord has more questions. I don't hear any. Thank you, Mr. Gray. Thank you. Mr. Jones, you have three minutes. I think the fallacy in his argument, and I think the core error in the trial judge's decision, was the fact which the court stated twice, and that is, well, the Bradley v. Benton case was decided after the incident in this case. The cases are different for the reasons stated above, but it doesn't matter because Bradley was decided later. That misses the point. Bradley held that it was a violation of clearly established law in 2015 to tase someone in a precarious position, which could potentially cause death or serious bodily harm unless the circumstances warranted it. Yeah, but that's someone who's on top of an eight-foot wall, right? Yes. What if it's a seven-foot wall or a six-foot wall or a five-foot wall? It's not running in a parking lot. What if it's standing? My head is six feet off the floor. You paralyze me. I cannot break the fall like I can if I'm tackled. I fall down and I land head first on the pavement. If I'm approaching the pavement and my momentum when I fall is going to make me land on the pavement or on a curb, which is what happened in the Walker case that I cited with Judge Treadwell, that would be a violation of the training that every, not only every reasonable officer, but every unreasonable officer gets. Every officer in this country is trained. It says, avoid using a CEW, it's a taser, on a person in the following circumstances unless the situation justifies an increased risk. One, the elevator or unstable surface. Two, fall and cause serious injury to the head. Three, and this is what applies here, is running or moving under momentum. And there were others as well that y'all mentioned. Unable to catch or protect self when a fall. He argued that that's the case, and he argued them well, and he needs an opportunity to argue that to a jury. But the rule is the rule. And we're not here to say that next time this happens and the guy dies from his injury instead of just being hospitalized for several days with a subdural lymphoma, next time the guy could be dead. And I think that this is a rule here that's clear. It can be applied by juries. If you require too much factual specificity, it actually provides less guidance. If the rule is it's got to be a six-foot height or higher, what happens when it's a five-foot height or a four-foot height? Isn't it easier to just let the rule be what a reasonable officer is trained to do with no one to the circumstances, and then there's a jury question? Yeah, the problem with that, Mr. Jones, is that sometimes there's a fine line between when you're talking about the province of state tort law and when you're talking about the province of constitutional law. And you've pleaded this case as a constitutional claim. Yes. And that makes it more difficult for you. You're not going to read them on a standard. Absolutely. And actually... But that's not defined by the contours of training standards or the stuff of negligence. No, the people who do the training are doing it consistently with the law and what they believe the law to be. Okay. And that's what a reasonable officer would think the law is. And I think that this is a jury case. I think we understand your case, Mr. Jones. We're going to move to the last one for today.